IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

WARREN WADDY,

    Petitioner,

  -v-

NORMAN ROBINSON, Warden,

    Respondent.

Case No. 3:98-cv-084

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

## DECISION AND ORDER DENYING MOTION FOR DISCOVERY

This capital habeas corpus case is before the Court on Petitioner Waddy's Motion to Conduct Discovery (Doc. No. 253) which the Warden opposes (Doc. No. 254); Waddy has filed a Reply in support (Doc. No. 255).

Waddy seeks to conduct discovery relative to his second and twenty-first Grounds for Relief which he has pled as follows:

> **SECOND GROUND FOR RELIEF:**
>
> MR. WADDY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL TO WHICH HE WAS ENTITLED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE TRIAL OUNSEL FAILED TO OBTAIN A NEUROPSYCHOLOGICAL EVALUATION WHICH WOULD HAVE REVEALED CEREBRAL DYSFUNCTION AND BECAUSE COUNSEL FAILED TO INSURE THAT A PROPER INVESTIGATION OF ALL POTENTIAL MITIGATING FACTORS WAS CONDUCTED BEFORE TRIAL. MR. WADDY WAS PREJUDICED BY THESE FAILURES BECAUSE SUBSTANTIAL MITIGATION EXISTS BUT WAS NOT PRESENTED TO THE JURY FOR CONSIDERATION DURING SENTENCING PHASE DELIBERATIONS.

1

**TWENTY-FIRST GROUND FOR RELIEF:**

COURT APPOINTED *ATKINS* COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO MR. WADDY AT THE TRIAL LEVEL THEREBY DENYING WADDY HIS RIGHT TO COUNSEL IN VIOLATION OF HIS SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS.

(Second[1] Amended Petition, Doc. No. 208, PageID 1962, 2019.)

### Standard for Discovery in Habeas Corpus Cases

Waddy moves for discovery under Rule 6 of the Rules Governing § 2254 Cases and "the Federal Rules of Civil Procedure." (Motion, Doc. No. 253, PageID 19444.) Rule 12 of the Rules Governing § 2254 Cases provides "[t]he Federal Rules of Civil Procedure, to the extent they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing § 2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002), *citing Murphy v. Johnson,* 205 F.3d 809, 813-15 (5th Cir. 2000). "Even in a death

---

[1] Doc. No. 208 is in fact Waddy's Second Amended Petition, although not labeled in that way by Waddy's counsel. It will be referred to hereinafter as the Second Amended Petition.

penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004), *quoting Stanford*, 266 F.3d at 460.

In conducting the analysis that led to granting discovery in *Bracy v. Gramley, supra*, the Supreme Court provided at least part of the template which lower courts should follow in deciding discovery motions in habeas corpus cases.

First of all, it identified the claims to which the sought discovery in that case related and specifically determined whether they were claims upon which habeas corpus relief could be granted at all. Federal habeas corpus is, of course, available only to correct wrongs of constitutional dimension. 28 U.S.C. § 2254(a); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). In *Bracy* the claim was that the trial judge was biased in favor of other defendants who had bribed him and therefore had a motive to be harsh with those, like the petitioner, who had not. The Supreme Court distinguished this kind of claim of judicial disqualification from other non-constitutional claims which would not be cognizable in habeas corpus. This part of the *Bracy* analysis makes it clear that discovery should not be authorized on allegations in a habeas corpus petition which do not state a claim upon which habeas corpus relief can be granted.

Secondly, the Supreme Court identified circumstances which corroborated Bracy's theory of relief and request for discovery:

> As just noted above, petitioner's attorney at trial was a former associate of Maloney's, App. 51, and Maloney [the corrupt trial judge] appointed him to defend this case in June 1981. The lawyer announced that he was ready for trial just a few weeks later. He did not request additional time to prepare penalty-phase evidence in this death penalty case even when the State announced

3

> at the outset that, if petitioner were convicted, it would introduce petitioner's then-pending Arizona murder charges as evidence in aggravation.  Tr. of Oral Arg. 43.  At oral argument before this Court, counsel for petitioner suggested, given that at least one of Maloney's former law associates--Robert McGee--was corrupt and involved in bribery, see supra, at 8, that petitioner's trial lawyer might have been appointed with the understanding that he would not object to, or interfere with, a prompt trial, so that petitioner's case could be tried before, and camouflage the bribe negotiations in, the Chow murder case.  Tr. of Oral Arg. 17-18, 43-44. [FN11] This is, of course, only a theory at this point; it is not supported by any solid evidence of petitioner's trial lawyer's participation in any such plan.  It is true, however, that McGee was corrupt and that petitioner's trial coincided with bribe negotiations in the Chow case and closely followed the Rosario murder case, which was also fixed.

520 U.S. 907-908.

> We emphasize, though, that petitioner supports his discovery request by pointing not only to Maloney's conviction for bribe taking in other cases, but also to additional evidence, discussed above, that lends support to his claim that Maloney was actually biased in petitioner's own case.  That is, he presents "specific allegations" that his trial attorney, a former associate of Maloney's in a law practice that was familiar and comfortable with corruption, may have agreed to take this capital case to trial quickly so that petitioner's conviction would deflect any suspicion the rigged Rosario and Chow cases might attract.

*Id*. at 909.  The quoted "specific allegations" language is from *Harris v. Nelson, supra,* and demonstrates that the Supreme Court in both cases was adverting not to the **claim** language in the habeas petition, but to specific **evidence** obtained outside the discovery process and presented in support of a motion for discovery, which corroborates the claimed constitutional violation.

Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d

4

at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Williams,* 380 F.3d at 974*, citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

Waddy summarizes his understanding of Rule 6 and *Bracy* as follows:

> Pursuant to *Bracy,* a petitioner demonstrates "good cause" when he or she can cite to a theory, premised on specific allegations, to support a colorable constitutional claim. That theory can be speculative, in that the petitioner need not have any evidence that his theory is correct. The petitioner also need not show that he ultimately will prevail on his underlying constitutional claim in order to show good cause.

(Motion, Doc. No. 253, PageID 19446.) Waddy asserts this summary, and particularly the appropriateness of discovery even on claims that are "speculative," is supported by *Wellons v. Hall*, 558 U.S. 220 (2010), a *per curiam* GVR decision[2] of the Supreme Court.

This Court doubts seriously that the Supreme Court had any intention of using *Wellons* to modify the standard for discovery under Rule 6. *Bracy*, its leading case on the subject, is not mentioned. The Court did not endorse discovery on petitioner's misconduct claims, but remanded for the Eleventh Circuit to make that decision. It appeared to endorse an evidentiary hearing, but this decision was handed down only one term before the Court radically curtailed evidentiary hearings in habeas cases in *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011),

The Eleventh Circuit on remand also adopted no new law on habeas discovery. Instead,

---

[2] The Supreme Court uses this description for a decision which grants certiorari, vacates the judgment below, and remands. *Wellons* at 225. Such a decision is appropriate "when intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the matter." *Id.*, quoting *Lawrence* v. *Chater,* 516 U.S. 163, 167, 116 S. Ct. 604, 133 L. Ed. 2d 545 (1996) *(per curiam).*

5

it held "[i]n light of the extraordinary circumstances[3] of this case, and for purposes of this case alone. . . ." it reversed the district court's denial of discovery and an evidentiary hearing and remanded for "discovery . . . and an evidentiary hearing as [the district court] sees fit." *Wellons v. Hall*, 603 F.3d 1236, 1237 (11th Cir. 2010).

The Court concludes that *Wellons* will support discovery only in cases where a petitioner can present truly bizarre facts and speculation about what caused those facts to occur. Nothing like that exists in this case.

Waddy also asserts that *Pinholster, supra*, has no impact on habeas discovery because "Ohio's post-conviction review process provides an individual with effectively no procedural due process." (Motion, Doc. No. 253, PageID 19448.)

Waddy's counsel overread *Pinholster*. Nothing in that decision suggests that a habeas petitioner who has been denied discovery in the state courts is empowered to use federal habeas discovery to correct that denial.

Waddy also asserts that liberal discovery should be granted because this is a capital case (Motion, Doc. No. 253, PageID 19454). However, the Supreme Court has never adopted discovery standards particular to capital habeas cases.

**Discovery Sought on the Second Ground, Ineffective Assistance of Counsel in Mitigation**

With respect to his claim of ineffective assistance of trial counsel at the mitigation stage, Waddy seeks to depose his trial counsel, the Honorable G. Gary Tyack and Daniel M. Hunt, and the mitigation specialist they hired, Stacey Michael. These requests are said to be supported by the psychological evaluation of Dr. Jeffrey Smalldon and an affidavit from James Crates. Dr.

---

[3] The "extraordinary circumstances" were the gift of a chocolate penis to the judge and chocolate breasts to the bailiff in a capital trial.

Smalldon evaluated Waddy on various dates in March and April, 1995, and produced a report of that evaluation dated March 6, 1996 (Return of Writ, Doc. No. 228-3, PageID 6924-47). Mr. Crates' Affidavit is dated March 13, 1996. *Id.* at 6949-6966. This habeas corpus case was opened November 14, 1997 (Motion to Proceed *in forma pauperis,* Doc, No. 1). The Petition, filed February 26, 1998, contained the following Ground for Relief alleging ineffective assistance of trial counsel in the mitigation phase of the trial:

> **SECOND GROUND FOR RELIEF:**
>
> PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL TO WHICH HE WAS ENTITLED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE TRIAL COUNSEL FAILED TO OBTAIN A NEUROPSYCHOLOGICAL EVALUATION WHICH WOULD HAVE REVEALED CEREBRAL DYSFUNCTION AND BECAUSE COUNSEL FAILED TO INSURE THAT A PROPER INVESTIGATION OF ALL POTENTIAL MITIGATING FACTORS WAS CONDUCTED BEFORE TRIAL. PETITIONER WAS PREJUDICED BY THESE FAILURES BECAUSE SUBSTANTIAL MITIGATION EXISTS BUT WAS NOT PRESENTED TO THE JURY FOR CONSIDERATION DURING SELECTION PHASE[4] DELIBERATIONS.

(Doc. No. 6, PageID 709.)

On February 23, 2000, the Court granted in part and denied in part Waddy's then-pending Motion for Discovery (Doc. No. 75; Order at Doc. No. 90). This included all discovery sought on Waddy's claim of ineffective assistance of trial counsel in the mitigation phase. The Order also provided "[a]ll discovery shall be completed by May 31, 2000." (Doc. No. 90, p. 3.) The time for completion was later extended to September 30, 2000 (Doc. No. 107). Waddy did not

---

[4] The context makes clear that counsel are here referring to the mitigation phase or the phase of a capital trial at which the jury "selects" the sentence to recommend.

seek to depose Judge Tyack, Mr. Hunt,[5] or Ms. Michael in 2000.  The Court set a discovery cut-off regarding Waddy's claim of ineffective assistance of trial counsel in mitigation of almost fourteen years ago and Waddy has not shown good cause to excuse his failure to depose these persons before the cut-off.  The fact that he has new counsel certainly does not warrant starting over in the discovery process.

**Discovery Sought on the Twenty-First Ground:  Ineffective Assistance in *Atkins* Proceedings**

In his Twenty-First Ground for Relief, Waddy asserts he received ineffective assistance of trial counsel in presenting his *Atkins* claim to the Ohio courts.

*Atkins v. Virginia,* 536 U.S. 304 (2002), recognized a new constitutional right, to wit, that execution of the mentally retarded constitutes cruel and unusual punishment prohibited by the Eighth Amendment.

Since *Atkins* a consensus has developed among psychologists that the term "mental retardation" should  be avoided as a category and "intellectual disability" is now the preferred term. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 31 (5th Ed. 2013); American Association on Intellectual and Developmental Disabilities, Intellectual Disabilities; Definition, Classification, and Systems of Support, 3, 6, (11th Ed. 2010).  The term "intellectual disability" now has the same legal meaning as the term "mental retardation" did in *Atkins*.  *Hall v. Florida*, 134 S. Ct. 1986 (2014).   Thus it is now legally correct to say that to execute a person with an intellectual disability would constitute cruel and unusual punishment.

---

[5] Mr. Hunt may be deceased.  Prior Orders of the Court refer to Judge Tyack as Waddy's "surviving" trial attorney.

8

Waddy begins[6] his argument on his Twenty-First Ground for Relief by asserting that there is a right to counsel in a proceeding to determine whether a person has an intellectual disability so as to prevent his or her execution. Waddy argues by analogy from *Powell v. Alabama,* 287 U.S. 45, 68-69 (1932)(right to counsel in a state capital case), and cites *State v. Burke*, 2005-Ohio-7020, 2005 Ohio App. LEXIS 6285 (10th Dist. Dec. 30, 2005)(holding an Ohio capital prisoner was entitled to two death-certified counsel in a post-*Atkins* proceeding under Ohio Revised Code § 2953.21).

In order to prevail on his Twenty-First Ground for Relief, however, Waddy must establish that he had a constitutional right to effective assistance of counsel in his post-*Atkins* proceeding under Ohio Revised Code § 2953.21. Only violations of the United States Constitution can ground federal habeas relief. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). *Burke* recognizes a rule-based right to death-certified counsel in an *Atkins* proceeding. A habeas corpus petitioner sentenced to death has a statutory right to appointed counsel. 18 U.S.C. § 3599(a)(2), formerly 21 U.S.C. § 848(q). But Waddy cites no Sixth Circuit authority, much less any clearly established Supreme Court precedent, holding that he had a constitutional right to effective assistance of counsel in his post-*Atkins* proceeding. The citations of *Gideon v. Wainwright,* 372 U.S. 335 (1963)(right to counsel in a state felony case), and *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (9143)(right of religiously-motivated school children not to be compelled to recite the Pledge of Allegiance) are simply not on point.

The Warden claims the question is readily answered by the lack of any constitutional

---

[6] The Court ignores as surplusage ¶ 294 which states "Mr. Waddy incorporates by reference all the allegations contained in this petition as if fully rewritten herein."

right to representation in post-conviction collateral attack proceedings (Memorandum in Opposition, Doc. No. 254, PageID 19473-74).

As Waddy notes, the question only arises for that class of persons who had been sentenced to death before *Atkins* but had not yet been executed (Second Amended Petition, Doc. No. 208, PageID 2022, ¶ 270).  For those not yet tried as of the time *Atkins* was handed down, the intellectual disability issue will be a trial issue on which defendants will be entitled to the same constitutionally effective assistance of counsel as they are on all other issues.

Waddy's observation that Atkins is "retroactive" is also not dispositive. *Id*. at PageID 2021, ¶ 269.  *Atkins* is retroactive in the sense that it applies to persons already condemned to death at the time it was decided.  But courts have also held it does not entitle those persons to a new trial.  See, *e.g., Burke, supra.*; *State v. Lott*, 97 Ohio St. 3d 303 (2002).  The Supreme Court has even refused to give *res judicata* effect to pre-*Atkins* determinations by state courts of intellectual disability.  *Bies v. Bobby*, 556 U.S. 825 (2009).  In *Atkins* itself and again in *Bies*, the Supreme Court approved state selection of procedures for post-*Atkins* decisions of intellectual disability for persons capitally sentenced before *Atkins*.[7]

Waddy relies on *Hooks v. Workman*, 689 F.3d 1148 (10th Cir. 2012), which did hold that there is a constitutional right to effective assistance of counsel in post-*Atkins* proceedings.  However, this Court has rejected that claim despite *Hooks*.  *Bays v. Warden,* 2013 U.S. Dist. LEXIS 119480 (S.D. Ohio 2013)(Merz, M.J.), adopted 2014 U.S. Dist. LEXIS 627 (S.D. Ohio 2014)(Rose, D.J.)  The same result was reached in *Hill v. Anderson*, 2014 U.S. Dist. LEXIS 86411 (N.D. Ohio 2014)(Adams, D.J.), and in *Williams v. Mitchell*, 2012 U.S. Dist. LEXIS 141852 (N.D. Ohio 2012)(Nugent, D.J.)  Waddy identifies no court which has followed *Hooks*.

---

[7] In *Bies* the State had conceded at trial and the trial judge had found in post-conviction that the petitioner was mentally retarded.  This Court and the Sixth Circuit held that finding was entitled to *res judicata* effect, but the Supreme Court unanimously reversed, requiring Bies to proceed under *State v. Lott*.

Prospectively this Court has always assured that capital habeas petitioners with *Atkins* claims had death-certified counsel to represent them in those post-*Atkins* Ohio Revised Code § 2953.21 proceedings. But viewing the question retrospectively, it is far from clear that a capital petitioner who received legal assistance in such a proceeding which fell below the *Strickland v. Washington* standard would on that basis be entitled to habeas corpus relief.

Even if the Court assumes *arguendo* that there is a constitutional right to effective assistance of counsel in post-Atkins proceedings under *Lott*, that still would not entitle Waddy to the discovery he seeks on his Twenty-First Ground for Relief because he has not presented that claim to the Ohio courts.

Waddy asserts "[t]he state offers no forum in which a petitioner can challenge the effectiveness of Atkins counsel." (Motion, Doc. No. 253, PageID 19452). On the contrary, Ohio provides a forum under Ohio Revised Code § 2953.21 to litigate claims of constitutional error in criminal proceedings. Waddy cites no authority for the proposition that his present claims, which rely largely on evidence outside the state court record in the *Lott* proceeding, could not be brought in an Ohio post-conviction proceeding.[8] It is true that Ohio courts have, in the past, been unaccommodating of requests for discovery and evidentiary hearings in capital cases under Ohio Revised Code § 2953.21, but more recent cases have been more liberal in that regard. Indeed, in this case, the Tenth District reversed a denial of evidentiary hearing.

Because there is no clearly established right to constitutionally effective assistance of counsel in post-*Atkins* intellectual disability proceedings and because, even if there is such a

---

[8] The other usual forum for ineffective assistance of trial counsel claims – direct appeal – was not available here because of the reliance on extra-record evidence and because Waddy was represented on appeal by the same attorneys who litigated the *Atkins* proceeding in the trial court.

11

right, Waddy has not presented a claim based on that right to the Ohio courts, his request to depose all of his post-*Atkins* counsel is DENIED.

September 18, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

12